## JOHN. J. DONALDSON *v.* LAURISTON HALL.

An act, admission or representation will not operate as an estoppel *in pais*, unless it is made with the design to influence the conduct of the party who acts upon it.

The mere rendition, by a surviving partner, of a copy of the firm's books showing a credit to A. for the amount of which the firm had given to A. a non-negotiable due-bill, does not estop such surviving partner from denying the debt, in an action against him upon the due-bill, by an assignee of A.; it not appearing that such rendition was made with any intent to induce others to purchase the claim.

Otherwise, *it seems,* if the plaintiff, before purchasing the due-bill, had sought for information from the defendant, and the latter had given him a copy of the account, showing the credit.

A gift from a husband to his wife,—*Held,* sufficiently proved.

APPEAL from a judgment 'entered on a verdict at special term.

This action was brought by the plaintiff as assignee of the following instrument:

"$2,400.                              NEW YORK, May 1st, 1859.

Due Mary L. Hall twenty-four hundred dollars, with interest on fourteen hundred dollars from October 21st, 1858, and with interest on one thousand dollars from January 29th, 1859, being proceeds of Francis Gilman's mortgage note, and of three Mad River and Lake Erie R. Road bonds.

J. MORTIMER HALL & Co."

The firm of Mortimer Hall & Co. was composed of J. Mortimer Hall, deceased, and his brother, the defendant, who is now sued as the surviving partner. On the trial, it was admitted that the note in suit was in the handwriting of the deceased partner. The defendant, in the month of January, 1862, sent to Mary L. Hall, the widow and executrix of his deceased partner, a transcript of the balances of the firm-books, in which she was credited with $2,777.12. The plaintiff testified that

he had seen the transcript before purchasing the note in suit. Mrs. Hall testified that the mortgage note and bonds, mentioned in the due-bill, had been given to her by her husband, in the years 1856 and 1857; that she gave the mortgage note to the defendant in 1858, for collection, as he was going West, and that she gave the railroad bonds to her husband in 1859, and never received the proceeds of either or any of them, except in the note in suit. The defendant testified that the mortgage note and bonds belonged to his deceased partner, who had delivered the former to him to use in paying the debts of the firm, and it was so used, and that the bonds were used for the same purpose by his partner. The deceased partner made the entry of the indebtedness of the firm to Mrs. Hall, against his objection, and he offered to show that his brother had agreed to change the credit to his capital stock account, and that he saw the note in suit for the first time after his partner's death. The defendant offered to show that the deceased partner was still indebted largely to the firm. Excluded by the court.

The testimony having been closed, the court held that there was no question to go to the jury, and directed them to find for the plaintiff. From the judgment entered upon the verdict, the defendant appealed to the general term.

*Wakeman & Latting* and *John C. Dimmick*, for appellant.

*John Graham* and *George Owen*, for respondent.

By the Court.—Daly, F. J.—The account or balance sheet which the defendant sent to Mrs. Hall, or to her co-executor, and which the plaintiff saw before he purchased the due-bill, was merely presumptive evidence that the firm was indebted to Mrs. Hall in the amount of the due-bill. It was simply a transcript of the balances, as they appeared upon the books of the firm, at the time when the account was made out by the defendant. This account was not conclusive as between the defendant and Mrs. Hall (*Nichols* v. *Alsop*, 6 Conn. R. 477), and it would not operate as an estoppel between the defendant and the plaintiff, as there is nothing in the case to show that it was made out and

sent with the design of inducing the plaintiff to purchase the due-bill. It probably enabled Mrs. Hall to sell the claim to the plaintiff. It may have been the moving cause which induced him to purchase it; but that is not sufficient to constitute an estoppel. An act, admission or representation will not operate as an estoppel *in pais*, unless it is made with the design to influence the conduct of the party who acts upon it (*Welland Canal Co.* v. *Hathaway*, 8 Wend. 483; *Dezel* v. *Odell*, 3 Hill, 215; *Mechanics' Bank* v. *New York and New Haven Railroad Co.* 13 N. Y. 638; *Pickard* v. *Sears*, 6 Adolph. & E. 469; *Gregg* v. *Wells*, 10 Id. 90; *Tufts* v. *Hayes*, 5 New Hamp. R. 453). The acceptor of a bill of exchange is estopped from denying the genuineness of the signature of the drawer, as the indorser of a promissory note is estopped from disputing the genuineness of the preceding signatures; but this is an exception to the general rule, in favor of instruments of this negotiable character (*Drayton* v. *Dale*, 2 Barn. & Cress. 293; *Taylor* v. *Croker*, 4 Esp. R. 187; *Bass* v. *Clive*, 4 M. & Selw. 13). Such instruments pass by their mere indorsement, and it would impede their circulation, and impair the security of commercial transactions, if the parties who have given them credit and currency by accepting or indorsing them, should be afterward permitted to dispute their genuineness. But the sending by a surviving partner to the executor of his deceased partner of an account of the assets and of the indebtedness of the firm, from which it appeared that the firm was indebted to one of the executors in a certain sum, could not be regarded as having been made with the design of inducing others to purchase the claim. It was merely a statement of the affairs of the firm of which the executor had a right to be advised, and which it was the duty of the defendant to furnish, and, as between him and the executor, it would be presumptive evidence, but it would not be conclusive. If the plaintiff, before purchasing the due-bill, had sought for information from the defendant respecting it, and the defendant had sent him a transcript of the account of Mrs. Hall, as it appeared upon the books of the firm, the case would have been very different. When the plaintiff took an assignment of the due-bill, he took it subject to the equities existing between the original

parties. It was not payable to order, and was not designed to be transferable by indorsement, and as the defendant made no representation to the plaintiff respecting it, or in respect to the state of Mrs. Hall's account with the firm, he was no more estopped from disputing it in a suit by the assignee, than he would have been if Mrs. Hall herself had sued upon it.

If the mortgage note and the railroad bonds were given to Mrs. Hall by her husband, in the manner described by her, I think it would, within the cases, have been a valid gift, and that the property would have become hers (*Lucas* v. *Lucas*, 1 Atk. 270 ; *McLean* v. *Longlands*, 5 Ves. 71 ; *Slanning* v. *Style*, 3 P. Wm. 337 ; *Lawson* v. *Lawson*, Id. 442 ; *Walter* v. *Hodge*, 2 Swanst. 97). As these securities were afterward collected by the firm, and used for the payment of its debts, and as the due-bill purports upon its face to have been given to Mrs. Hall for the proceeds which the firm had thus collected and used, these facts would suffice to show that the due-bill was a valid obligation in the hands of Mrs. Hall, or in those of her assignee, and that the defendant, as the surviving partner of the firm, was bound to pay it. But the difficulty in the case is, that the judge held that there was nothing for the jury to pass upon, and instructed them to find a verdict for the plaintiff; whereas there was a conflict between the testimony of Mrs. Hall and that of the defendant upon a point which cannot be regarded as immaterial, and which the jury alone could pass upon. Apart from the existence of the due-bill, and of the credit to Mrs. Hall on the books of the firm, the only evidence of the gift of the securities to her by her husband was her own testimony, and, in the account of the general transaction, she testified that she gave the mortgage note to the defendant between the 1st of January and the 21st of May, 1858, to collect, having up to that time retained it in her possession; while the defendant testified that it was given to him by his brother, with instructions to collect it, and to apply the proceeds to the payment of a debt of the firm, which he did. It was for the jury to say which of these two statements they would believe, and if they believed that of the defendant, it was for them to determine whether they would regard this as affecting her general credibil

ity or not. The existence of the due-bill, and the fact of the entry to her credit of the sum of $2,596 upon the books of the firm upon January 1, 1861, which was the amount of the proceeds of these securities, with interest up to that date, are circumstances which show very satisfactorily to my mind that these securities were actually given to her by her husband, and had become her property when they were collected and applied to the use of the firm; but I do not see how the case could be taken from the jury. It is a matter of regret to be compelled to grant a new trial, but I cannot see how it can be avoided.

New trial ordered.